UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:05-CV-763  RM |
| | ) | |
| JAMES R. WHEELER, | ) | |
| LARRY PARKS, MICHAEL KILE, | ) | |
| and GALLERY GRAPHICS – | ) | |
| SOUTH BEND LLC 401(k) PLAN, | ) | |
| | ) | |
| Defendants | ) | |

<u>OPINION and ORDER</u>

In November 2005, the Secretary of Labor filed a complaint against the defendants in this action alleging violations of Title I of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* A default judgment was entered against James Wheeler and Gallery Graphics-South Bend LLC 401(k) Plan in August 2006, and this cause is now before the court on the Secretary's motion seeking summary judgment as to Larry Parks and Michael Kile for co-fiduciary liability pursuant to 29 U.S.C. § 1105(a)(3). Mr. Parks and Mr. Kile have filed separate oppositions to the summary judgment motion. For the reasons that follow, the court grants the Secretary's motion.

FACTS

The facts of the case, viewed in the light most favorable to the defendants, are as follows. In June 2002, Gallery Graphics–South Bend, LLC purchased Petersen Printing. At the time of the sale, a 401(k) Plan that Petersen Printing established for the benefit of its employees was transferred to Gallery Graphics. James Wheeler, owner of 80% of Gallery Graphics, became the company's Manager; Larry Parks, who had been the chief financial officer for Petersen, became Gallery Graphics' Chief Financial Officer and a named trustee of the company's 401(k) Plan; and Michael Kile became Gallery Graphics' President and a named trustee of the company's 401(k) Plan.

Gallery Graphics began withholding employees' voluntary contributions to the 401(k) Plan from their paychecks: contributions totaling $11,710.53 were withheld during the period December 31, 2002 to April 25, 2003. The funds withheld during that period weren't paid into the 401(k) Plan, but instead were kept in Gallery Graphics' general corporate account. According to Mr. Parks and Mr. Kile, James Wheeler had sole and total control over Gallery Graphics' finances during that December-April period.

Mr. Parks says that Mr. Wheeler informed him in December 2002 that no further payments, including contributions to the 401(k) Plan, were to be made without Mr. Wheeler's approval. Mr. Parks says thereafter he had no control over the finances of Gallery Graphics. He says he knew contributions to the 401(k) Plan weren't being made, and he continued to remind Mr. Wheeler to make those contributions and pay vendors. Mr. Parks says in March and April 2003, the

2

company was unable to remit payroll checks, and in April, he learned from Mr. Wheeler that new financing was being arranged through Alliance Financial to cover payroll, taxes, and 401(k) Plan contributions. According to Mr. Parks, even though Mr. Wheeler "constantly assured [him] that the company was in the process of refinancing and that all matters would be taken care of in short order," Gallery Graphics received no funds from Alliance Financial. Mr. Parks reports that the Department of Labor became involved in the company's financial situation in May 2003, and on May 14 he was terminated from his position with Gallery Graphics. Mr. Parks states that he continued to work with the Administrative Retirement Services after his termination to distribute Galley Graphics funds and finalize the termination of the 401(k) Plan.

Mr. Kile contends it was "very clear at the beginning of Gallery Graphics' existence in June of 2002 that all company finances were going to be handled by" James Wheeler. Mr. Kile reports that he and Mr. Wheeler engaged in a heated discussion about company finances in November 2002 when Mr. Kile learned that a bank had placed limits on Gallery Graphics' available credit. Mr. Kile says he had a disagreement with Mr. Wheeler the following month relating to certain Christmas party expenditures and Mr. Wheeler informed him that the company's finances were none of Mr. Kile's business. Mr. Kile says Mr. Wheeler instructed him to focus his efforts on sales and production and leave the company's finances to Mr. Wheeler. Mr. Kile says after that time he was denied access to all company financial records and wasn't permitted to perform any functions related to the

3

401(k) Plan, its assets, or the employee contributions. Mr. Kile says he learned, in December 2002 from Mr. Parks and in January 2003 from union officials, that payments to the 401(k) Plan were not being made, but he says he received assurances from Mr. Wheeler that the payments were "being handled." Mr. Kile says he believed that "the payments would be made." Mr. Kile resigned from Gallery Graphics in May 2003.

Gallery Graphics was declared insolvent on May 8, 2003 and the St. Joseph Circuit Court appointed a receiver. Mr. Kile asserts that had he and the other Gallery Graphics employees who were willing to continue to work after the company became insolvent been allowed to finish work on jobs that were near completion, enough money could have been generated to satisfy the deficiencies in the 401(k) Plan. According to Mr. Kile, the receiver agreed with his assessment of their ability to generate those funds, but the Department of Labor refused to allow the work to continue. Gallery Graphics' assets were sold at auction on August 14, 2003.

The Secretary of Labor filed a complaint in November 2005 against Mr. Wheeler, Mr. Parks, Mr. Kile, and Gallery Graphics–South Bend LLC 401(k) Plan. The Secretary's amended complaint, filed in January 2006, alleges Mr. Wheeler's failure to remit participant salary deferrals to Galley Graphics' 401(k) Plan (Count 1) and the company's health plan (Count 3), and co-fiduciary liability on the part of Mr. Parks and Mr. Kile for their failure to take reasonable steps to remedy the breach by Mr. Wheeler (Count 2). The Secretary seeks recovery from Messrs.

4

Wheeler, Parks, and Kile of all losses to the 401(k) Plan and recovery from Mr. Wheeler of all losses to the health plan; an order that Mr. Wheeler correct the prohibited transactions related to the 401(k) and health plans; an order enjoining Messrs. Wheeler, Parks, and Kile from serving as fiduciaries or service providers in any ERISA-covered employee benefit plan; appointment of an independent fiduciary to terminate the 401(k) Plan; an order requiring Messrs. Wheeler, Parks, and Kile to pay all fees and expenses incurred by the independent fiduciary in administering and terminating the 401(k) Plan; and costs of the action. A default judgment was entered against Mr. Wheeler and Galley Graphics on August 1, 2006 (*see* docket # 35).[1] The Secretary is now before the court seeking summary judgment against Mr. Parks and Mr. Kile.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

---

[1] In May 2006, Mr. Wheeler was indicted and charged with two counts of misappropriating the funds of the Gallery Graphics 401(k) Plan and the company's health care plan. A jury found Mr. Wheeler guilty of those charges, and in March 2007 he was sentenced to 63 months' imprisonment and ordered to pay restitution in the amount of $210,902.84, plus interest.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

## DISCUSSION

The Secretary alleges that Larry Parks and Michael Kile are liable for the breaches committed by James Wheeler relating to the Gallery Graphics 401(k) Plan. ERISA § 405(a)(3) imposes liability upon a co-fiduciary who has knowledge of a breach of fiduciary responsibility by another fiduciary unless the co-fiduciary makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a)(3). The threshold question is whether Mr. Parks and/or Mr. Kile

6

qualify as fiduciaries of the 401(k) Plan. If they do, the court must determine whether Mr. Parks and/or Mr. Kile had knowledge of Mr. Wheeler's wrongful conduct and whether they took sufficient steps to attempt to remedy Mr. Wheeler's breach. Finally, Mr. Kile argues that he shouldn't be liable for repayment of the 401(k) Plan funds because the Secretary had a duty to, but didn't, mitigate her damages and because Mr. Wheeler has been convicted of embezzling those funds and ordered to repay them as criminal restitution.

### (A) Fiduciaries of the 401(k) Plan

Liability under ERISA § 405(a)(3) applies only to fiduciaries of a plan. 29 U.S.C. § 1105(a). An individual or entity can become a fiduciary by being named as a fiduciary in the written plan instrument, 29 U.S.C. § 1102(a)(1), or being named and identified as a fiduciary pursuant to a procedure specified in the written plan instrument. 29 U.S.C. § 1102(a)(2). An individual or entity also may acquire fiduciary status by exercising "any discretionary authority or discretionary control respecting management of such plan," exercising "any authority or control respecting management or disposition of its assets," or having "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii). "Thus, § 1002(21)(A) creates a bifurcated test: 'Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually been granted discretionary

authority, regardless of whether such authority is ever exercised.'" <u>Bouboulis v.</u>
<u>Transport Workers Union of America</u>, 442 F.3d 55, 63 (2d Cir. 2006) (*quoting*
<u>Olson v. E.F. Hutton & Co., Inc.</u>, 957 F.2d 622, 625 (8th Cir. 1992)).

Mr. Parks and Mr. Kile say that even though they are named in the plan
document as trustees of the Gallery Graphics 401(k) Plan, they don't qualify as
"fiduciaries" as the statute defines that term because they had no power to act as
fiduciaries after December 2002 when Mr. Wheeler took over control of the
company's finances. Mr. Parks and Mr. Kile maintain that whether they were
fiduciaries should be viewed solely in terms of the control and authority they
exercised over the 401(k) Plan. They argue that since they didn't exercise any
control, they weren't fiduciaries. The court can't agree.

ERISA requires that each employee benefit plan have "one or more named
fiduciaries who jointly or severally . . . have the authority to control and manage
the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). The Gallery
Graphics 401(k) Plan and the Profit Sharing Plan Adoption Agreement name
Michael Kile and Larry Parks as Plan Trustees. As trustees, Mr. Parks and Mr. Kile
each possessed "exclusive authority and discretion to manage and control the
assets of the plan." 29 U.S.C. § 1103(a).[2]

Various provisions of the 401(k) Plan gave Mr. Parks and Mr. Kile authority
to administer the Plan. The Summary Plan Description specifically provides that

---

[2] ERISA § 403(a) includes two exceptions to a trustee's exclusive authority and discretion
to manage and control assets of a plan, but neither of those exceptions is applicable here. *See* 29
U.S.C. § 1103(a)(1) & (2).

the trustees are to value the trust fund, p. 13; invest the assets of the Plan per instructions of the participants, p. 13; control disbursements and the transfer and taxation of disbursements, p. 17; and abide by applicable waiting periods relating to disbursements before making those payments, p. 18. The Plan also contains the following "Statement of ERISA Rights":

> In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries.

Summary Plan Description [Mot., Exh. 4], p. 24.

In reliance on Ruiz v. Continental Casualty Co., 400 F.3d 986 (7th Cir. 2005), Mr. Parks and Mr. Kile argue that they can't be fiduciaries because they didn't exercise any authority or control over the 401(k) Plan. The Ruiz court concluded that Continental Casualty Company qualified as a fiduciary under 29 U.S.C. § 1002(21)(A)(iii) by virtue of its discretionary authority to make benefit eligibility decisions. 400 F.3d at 990. Like Continental Casualty, Mr. Parks and Mr. Kile qualify as fiduciaries under 29 U.S.C. § 1002(21)(A)(iii) by virtue of the discretionary authority and responsibility granted to them in the Plan document to administer and manage the Plan's assets. *See* Summary Plan Description; *see also* Ruiz, 400 F.3d at 990 ("While this court has held that no 'magic words' are necessary for a grant of discretionary authority, the language in the [plan document] is surely sufficient."). Moreover, the facts of this case provide additional considerations to support a finding that Mr. Parks and Mr. Kile were fiduciaries

9

of the Gallery Graphics 401(k) Plan, considerations not present or addressed in Ruiz. The Plan document named Mr. Parks and Mr. Kile as trustees, qualifying them as fiduciaries under 29 U.S.C. § 1102(a)(1), and as trustees, Mr. Parks and Mr. Kile had a statutory duty to exercise "exclusive authority and discretion to manage and control the assets of the plan" pursuant to 29 U.S.C. § 1103(a). Continental Casualty Company wasn't a named fiduciary or a trustee of the plan at issue in Ruiz and so had no duties under 29 U.S.C. § 1103(a). Nothing in Ruiz v. Continental Casualty Co. contradicts a finding that Messrs. Parks and Kile were fiduciaries of the Gallery Graphics 401(k) Plan.

Mr. Parks and Mr. Kile each had exclusive authority to manage and control the assets of the 401(k) Plan, 29 U.S.C. § 1103(a), and, in fact, had the duty to discharge their duties "solely in the interest of the participants and beneficiaries" under a prudent man standard of care. 29 U.S.C. § 1104(a); see also Summers v. State Street Bank & Trust Co., 453 F.3d 404, 407 (7th Cir. 2006) (a trustee's "fundamental duty is to take as much care with the trust assets as he would take with his own property"). Even if, as Mr. Parks and Mr. Kile claim, they didn't exercise control over the 401(k) Plan, they possessed the power to act for the Plan and so qualify as fiduciaries under 29 U.S.C. § 1002(21)(A)(iii).[3] See Klostermahn v. Western General Mgmt., Inc., 32 F.3d 1119, 1123 (7th Cir. 1994) ("[T]he power to act for the plan is essential to status as a fiduciary under ERISA."); see also

_____

[3] "[A] person is a fiduciary with respect to a plan to the extent . . . (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii).

<u>Bouboulis v. Transport Workers Union of America</u>, 442 F.3d 55, 64 (2d Cir. 2006) (concluding that because union was designated as the "Plan Administrator" in the plan document, it "should be considered a fiduciary under subsection of ERISA § 3(21)(A), even if . . . there is no evidence that [the union] actually exercised this authority in a manner that would qualify under subsection one"); <u>In re Luna</u>, 406 F.3d 1192, 1201 (10th Cir. 2005) ("Once deemed a fiduciary, either by express designation in the plan documents or by the assumption of fiduciary obligations (the functional or de facto method), the fiduciary becomes subject to ERISA's statutory duties."); <u>Olson v. E.F. Hutton & Co.</u>, 957 F.2d 622, 625 (8th Cir. 1992) ("[ERISA § 405(a)(3)] describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised."); <u>Keach v. U.S. Trust Co., N.A.</u>, 240 F. Supp. 2d 832, 836 (C.D. Ill. 2002) ("In this circuit, 'a fiduciary is a person who exercises any power of control, management or disposition with respect to monies or other property of an employee benefit fund, or has the authority or responsibility to do so.'" (<i>quoting</i> <u>Farm King Supply v. Edward D. Jones & Co.</u>, 884 F.2d 288, 292 (7th Cir. 1989)); <u>Freund v. Marshall & Ilsley Bank</u>, 485 F. Supp. 629, 635 (C.D. Wis. 1979) ("By the very nature of their positions, plan trustees and a plan administrator are fiduciaries with respect to a plan. Thus, all of the persons who served as named trustees of the Plan were fiduciaries with respect to the Plan."); 29 C.F.R. § 2509.75-8, at D-3 ("[A] trustee of a plan must, by the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning

of section 3(21)(A)(iii) of the Act. Persons who hold such positions will therefore be fiduciaries.").

Mr. Parks and Mr. Kile claim they couldn't act as trustees of the 401(k) Plan because Mr. Wheeler took over control of the Gallery Graphics finances in December 2002.[4] According to Mr. Kile, Mr. Wheeler "installed himself as administrator and trustee of the Plan . . . [and] in essence and in practice, fired [Mr.] Kile from his position as trustee of the Plan." Messrs. Parks and Kile, though, haven't presented evidence of any written modification(s) to the Gallery Graphics 401(k) Plan formally removing either of them as Plan trustees. *See* Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 856 (7th Cir. 1997) ("ERISA does not permit the oral modification of substantive provisions of a written ERISA plan."). Nor have Messrs. Parks and Kile argued or presented evidence that either of them designated Mr. Wheeler or any other individual to carry out their responsibilities under the Plan. *See* 29 U.S.C. § 1105(c)(1)(B) (permitting named fiduciaries to designate "persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan"). Messrs. Parks and Kile were fiduciaries of the Gallery Graphics 401(k) Plan, so the next step is to determine whether they are subject to liability under 29 U.S.C. § 1105(a).

---

[4] Mr. Wheeler served in a fiduciary capacity with respect to the 401(k) Plan: while he wasn't a person named by the Plan as a fiduciary, he acquired fiduciary status by exercising authority and control over the management of the plan and its assets. *See* 29 U.S.C. § 1002(21)(A)(i).

*(B) Knowledge of Mr. Wheeler's Breach*

ERISA subjects a fiduciary to liability for a breach of fiduciary responsibility by another fiduciary with respect a plan "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(3). "Actual knowledge" of a breach has been defined as "knowledge of all relevant facts at least sufficient to give the [defendant] knowledge that a fiduciary duty has been breached or an ERISA provision violated." Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002) (examining "actual knowledge" requirement of 29 U.S.C. § 1113 and *quoting* Gluck v. Unisys Corp., 960 F.2d 1168, 1178 (3d Cir. 1992)); *see also* Rush v. Martin Petersen Co., Inc., 83 F.3d 894, 896 (7th Cir. 1996) (actual knowledge under 29 U.S.C. § 1113 requires knowledge of the "essential facts of the transaction or conduct constituting the violation," but not necessarily "knowledge of every last detail of a transaction or knowledge of its illegality"); Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992) ("We know that somewhere between 'every last detail' and 'something was awry' lies the requisite knowledge of an ERISA violation.").

Mr. Parks and Mr. Kile both admit they knew Mr. Wheeler wasn't making proper payments to the 401(k) Plan. Mr. Parks says he "did have knowledge that the contributions were not being made" after December 2002. Parks Memo., at 2-

13

3; Parks Ans. to First Amd. Compl., ¶ 19.[5] Mr. Kile states in his affidavit that he learned from Mr. Parks in December 2002 that payments to the 401(k) Plan were due and he received a letter from the union in January 2003 relating to problems with payments to the 401(k) Plan. Kile Aff., ¶ 10. In addition, Mr. Kile wrote in his May 14, 2003 letter of resignation that it had been brought to his attention that certain fiduciary payments, including 401K contributions, had not been made.

Mr. Kile argues that because he believed Mr. Wheeler would make payments to 401(k) Plan, he had no knowledge that contributions were not going to be paid. Mr. Kile, however, cites no legal authority for this interpretation of "sufficient knowledge." That Mr. Kile believed Mr. Wheeler eventually would make payments to the 401(k) Plan doesn't negate his actual knowledge of Mr. Wheeler's failure to timely make those payments.

Messrs. Parks and Kile haven't presented evidence sufficient to raise a genuine issue of material fact on this issue. The record supports a finding that they each had knowledge of Mr. Wheeler's failure to make contributions to the Gallery Graphics 401(k) Plan, and that knowledge is sufficient to trigger the affirmative duty to take reasonable efforts to remedy the breach under ERISA § 405(a)(3).

---

[5] Paragraph 19 of the first amended complaint alleges that "Defendants Parks and Kile had knowledge of co-fiduciary Wheeler's failure to remit participants' salary deferrals to the 401(k) Plan." Mr. Parks' answer reads as follows: "Defendant Parks admits rhetorical paragraph 19 of Plaintiff's First Amended Complaint as it applies to him."

*(C) Remedy of Breach*

ERISA § 405(a)(3) requires a plain fiduciary to make a reasonable effort to remedy a co-fiduciary's breach of fiduciary duty. 11 U.S.C. § 1105(a)(3). A trustee can't avoid liability for a co-fiduciary's breach "by simply doing nothing." Free v. Briody, 732 F.2d 1331, 1336 (7th Cir. 1984). Further, a fiduciary shall be liable when he improperly allows a co-fiduciary to have sole custody of the plan assets and makes no inquiry as to his conduct. *Id.* (*citing* H.R. Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5080.). In passing this provision of ERISA, Congress commented that "the most appropriate steps in the circumstances may be to notify the plan sponsor of the breach, or to proceed to an appropriate Federal court for instructions, or bring the matter to the attention of the Secretary of Labor." H.R. Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. at 5080. Similarly, the Department of Labor has commented that reasonable steps "might include preparations to obtain an injunction from a Federal District Court . . . [or] to notify the Labor Department." 29 C.F.R. § 2509.75-5, FR-10.

The Secretary says Mr. Parks and Mr. Kile could have taken reasonable steps to prevent Mr. Wheeler's fiduciary breach: they could have notified and informed the plan participants of the option to cease salary deferrals; they could have sought instruction from a court about what actions to take; or they could have notified the Department of Labor about Mr. Wheeler's improper actions. Instead, the Secretary says, Messrs. Parks and Kile allowed Mr. Wheeler "to

15

continue misappropriating participant salary deferrals intended for the 401(k) Plan for each of approximately 8 payrolls." The Secretary maintains that any belief on the part of Mr. Parks and/or Mr. Kile that Mr. Wheeler "would repay the delinquent contributions in future payrolls was contrary to the serious fiscal problems that [Messrs.] Kile and Parks, as corporate officers, were well aware."

Mr. Parks asserts in response that he tried to make a reasonable effort to remedy Mr. Wheeler's breach by "confront[ing] James Wheeler on numerous occasions with regard as to the necessity of making contributions to the plan." Mr. Parks claims he did "all he could to prod [Mr.] Wheeler to pay and to assist [Mr.] Wheeler in regard to refinancing the business until November, 2003." Apparently, Mr. Parks also notified Mr. Kile of the problem of Mr. Wheeler's nonpayment of contributions. Mr. Parks says based on Mr. Wheeler's "'apparent' personal wealth," he believed Mr. Wheeler when Mr. Wheeler gave him assurances about the Plan and the company in general.

Mr. Kile asserts he didn't have knowledge of Mr. Wheeler's breach and so didn't address the issue of whether he took reasonable steps to remedy the breach. The summary judgment record, though, demonstrates the following actions by Mr. Kile: when Mr. Kile learned in December 2002 that payments to the 401(k) Plan weren't being made, he confronted Mr. Wheeler about the nonpayment of those funds and Mr. Wheeler told him the payments were being handled. After learning in January 2003 that there were possible problems with payments to the 401(k) Plan, Mr. Kile confronted Mr. Wheeler and was again assured that the

16

payments were being handled. In May 2003, Mr. Kile resigned his position as President of Gallery Graphics, citing as a reason, *inter alia*, Mr. Wheeler's failure to make payments to the 401(k) Plan.

Mr. Parks and Mr. Kile haven't offered any support for a finding that their confronting Mr. Wheeler about his not making contributions to the 401(k) Plan could be seen as a reasonable effort to remedy Mr. Wheeler's breach and absolve them of fiduciary liability under 29 U.S.C. § 1105(a)(3). Neither Mr. Parks nor Mr. Kile claim their actions in this regard were akin to actions taken by a "reasonably prudent businessperson with the interests of all the beneficiaries at heart," as is required of a fiduciary. Ameritech Benefit Plan Commitee v. Communication Workers of America, 220 F.3d 814, 825 (7th Cir 2000). Neither has presented evidence tending to negate the inference that they enabled Mr. Wheeler's breach by their negligent monitoring of his actions. And even though Mr. Parks and Mr. Kile maintain Mr. Wheeler took over control of Gallery Graphics' finances, effectively removing them as trustees, even "resignation . . . without taking steps to prevent the imprudent action, will not suffice to avoid liability for the . . . trustees once they have knowledge that the imprudent action is under consideration." 29 C.F.R. § 2509.75-5, FR-10. Mr. Parks and Mr. Kile

> were not obligated to examine every action taken by [Mr. Wheeler], but under these circumstances . . . [Messrs. Parks and Kile] were obliged to take prudent and reasonable action to determine whether [Mr. Wheeler was[ fulfilling [his] fiduciary obligations. [Mr. Parks and Mr. Kile] could not . . . insulate themselves from all fiduciary liability by limiting their roles in the administration of the trust.

Leigh v. Engle, 727 F.2d 113, 135-136 (7th Cir. 1984).

The Gallery Graphics 401(k) Plan document informed employees that their payroll contributions, along with employer contributions, would be placed into investment accounts. Summary Plan Description, p. 13. Mr. Parks and Mr. Kile, as the 401(k) Plan trustees and fiduciaries, had a statutory duty to properly control and manage the 401(k) Plan and the contributions to that Plan. *See* Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142-143 (1985) (A fiduciary's statutory duties under ERISA "relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." (*citing* 29 U.S.C. §§ 1101-1114)). Mr. Parks and Mr. Kile had concerns of their own about the company's financial condition and knew Mr. Wheeler wasn't making payments to the 401(k) Plan, but they didn't notify the plan participants, investigate taking legal action to enforce ERISA provisions, or contact the Department of Labor to discuss their concerns about Mr. Wheeler's conduct.[6] Their inactions in this regard made it possible for Mr. Wheeler to convert the funds of the 401(k) Plan. Messrs. Parks and Kile haven't produced evidence sufficient to raise a genuine issue of material fact as to whether they took

---

[6] Too, Mr. Parks and/or Mr. Kile could have referred to the Plan document for guidance. That document advises as follows: "If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court." Summary Plan Description, p. 25.

reasonable steps to remedy Mr. Wheeler's breach, subjecting them to liability under 29 U.S.C. § 1105(a)(3).

### (D) Joint and Several Liability

Mr. Kile argues that he shouldn't be liable for Mr. Wheeler's conversion of the 401(k) Plan funds for two reasons. He first says he had no knowledge that Mr. Wheeler had stolen from the Plan, but, as discussed in Section (B), Mr. Kile knew Mr. Wheeler wasn't making proper contributions to the 401(k) Plan and Mr. Kile didn't act to protect the Plan's assets, resulting in Mr. Kile's liability under 29 U.S.C. § 1105(a)(3). Mr. Kile also points out that Mr. Wheeler has been ordered to pay restitution as part of his sentence for converting the Plan's funds. ERISA, though, doesn't limit a fiduciary's liability for the breach of a co-fiduciary, but, rather, creates joint and several liability among co-fiduciaries. *See* 29 U.S.C. § 1105(a); 29 U.S.C. § 1109(a); *cf.* Summers v. State Street Bank & Trust Co., 453 F.3d 404, 413 (7th Cir. 2006) (noting that in this circuit it is unsettled as to whether ERISA defendants have a right of contribution). That Mr. Wheeler was ordered to repay moneys to the 401(k) Plan doesn't negate Mr. Kile's (or Mr. Parks') liability or obligation to the repay Plan funds.

### (E) Mitigation of Damages

Mr. Kile also argues that the Secretary had an affirmative duty to mitigate her damages by allowing Gallery Graphics' employees to complete work orders

19

pending at the time of the appointment of a receivership. Mr. Kile has provided no legal support for his argument. The mitigation of damages doctrine traditionally applies only to suits in tort or contract law, and Mr. Kile has cited no authority recognizing the doctrine's application to ERISA actions. *See* <u>Scheilbuam v. Kmart Corp.</u>, 153 F.3d 496, 501 (7th Cir. 1998) ("Whether plaintiffs are even required to mitigate their damages in the ERISA context is not a settled matter of law."). Assuming *arguendo* that the Secretary had some duty to mitigate damages under ERISA, Mr. Kile has presented no evidence to support his assertion that he and other Gallery Graphics employees could have generated the revenues necessary to reconcile all payments due and owing to the Plan. Imposing a duty to mitigate requirement upon the Secretary would make it more difficult for the Secretary to carry out her duty to enforce the provisions of ERISA. Absent any clear authority establishing a failure to mitigate damages defense to an action by the Secretary to enforce ERISA provisions and in light of the inconsistency of such a defense to the primary purposes of ERISA, the court can't agree with Mr. Kile that the Department of Labor had a duty to mitigate its damages or is responsible for Mr. Kile's liability to the Gallery Graphics 401(k) Plan.

CONCLUSION

Based on the foregoing, the court GRANTS the Secretary's summary judgment motion [docket # 46] on the claims in the first amended complaint against Larry Parks and Michael Kile and ADJUDGES Larry Parks and Michael

Kile, together with James Wheeler, jointly and severally liable for the amounts due and owing to the Gallery Graphics 401(k) Plan. The Secretary is directed to submit, within ten days of this date, a proposed form of order for entry of a proper judgment in this action.

SO ORDERED.

ENTERED:   November 28, 2007

   /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

21